### NEELY et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1924.)

No. 2308.

**1. Criminal law ⟶1134(4)—Denial of motion for new trial not reviewable.**

In the federal courts the denial of a motion for new trial is not reviewable, unless there are exceptional circumstances.

**2. Criminal law ⟶1170(4)—Sustaining objection to question already answered not error.**

Sustaining objection to a question on cross-examination is not prejudicial error, where the witness had covered it in his previous testimony.

**3. Witnesses ⟶270(2)—Cross-examination as to action by state grand jury properly excluded.**

Cross-examination of witness as to whether state grand jury found indictment was properly excluded, as immaterial, on trial of a defendant for a federal offense.

**4. Criminal law ⟶1170(2)—Exclusion of question on cross-examination harmless, where all facts before jury.**

Exclusion of question asked government witness on cross-examination as to whether party of officers did not have sufficient force to remove man wounded in shooting affray between officers and persons found at still *held* not prejudicial, where the witness and others had testified fully as to number in party, and all facts and circumstances were before jury.

**5. Witnesses ⟶268(1)—Requiring defendant to exhibit arm to jury held not error.**

Overruling an objection to a question to a defendant on his cross-examination as a witness, asking him to roll up his sleeve and show his arm to the jury, *held* not error, even though witness acted unwillingly in complying with request.

**6. Internal revenue ⟶39, 40—Operator of illegal distillery may be prosecuted for separate offenses.**

One who operates a distillery without registering it, or giving bond, and without the required sign on it, and with intent to defraud the government of the tax, commits all of such several offenses, and may be prosecuted for each, under Rev. St. §§ 3258, 3279, 3281 (Comp. St. §§ 5994, 6019, 6021).

**7. Criminal law ⟶1177—Judgment not reversible, where sentence was authorized on certain counts.**

Where, the sentence imposed was within that authorized on certain counts which were supported by evidence, the judgment is not reversible because defendants may have been erroneously convicted on other counts.

**8. Criminal law ⬤⟞984—General sentence may be for aggregate which might be imposed on separate counts.**

A general sentence may be imposed on a defendant, convicted on several counts, which, though exceeding the maximum which could lawfully be imposed on a single count, is not greater than the aggregate sentence permitted on the several counts, though the better practice is to impose separate sentences on each count.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Criminal prosecution by the United States against Claut Neely and Grat Neely. Judgment of conviction, and defendants bring error. Affirmed.

J. Raymond Gordon, of Charleston, W. Va., for plaintiffs in error.

Elliott Northcott, U. S. Atty., of Huntington, W. Va. (B. J. Pettigrew, Asst. U. S. Atty., of Charleston, W. Va., on the brief), for the United States.

Before WOODS and ROSE, Circuit Judges, and COCHRAN, District Judge.

ROSE, Circuit Judge. The plaintiffs in error were defendants below, and will be so styled here. They were convicted on five counts of an indictment which charged them with violating sections 3258, 3281, and 3279 of the Revised Statutes (Comp. St. §§ 5994, 6019, 6021), by unlawfully, first, having in their possession and under their control a still and distilling apparatus set up without having the same registered as required by law; second, carrying on the business of distiller of spirituous liquors without having given bond as required by law; third, engaging in and carrying on the business of a distiller of spirituous liquors with intent to defraud the United States of the tax on the spirits distilled by them; fourth, working in a distillery for the production of spirituous liquors upon which distillery no sign bearing the words "registered distillery" was placed and kept as required by law; and fifth, knowingly carrying and delivering raw material, to wit, a quantity of mash, to a distillery for the production of spirituous liquors upon which no sign bearing the words "registered distillery" was placed and kept. They were convicted, and each was sentenced to be confined in the penitentiary for a period of six years and to pay a fine of $1,300.

[1] They assigned as error (a) the exclusion of certain testimony; (b) the remarks of the court in sustaining the government's objection to a question asked on their behalf; (c) the court's permitting, in cross-examination by the government of one of the defendants, the asking him to take off his coat and show the jury his right arm and elbow; and (d) to the overruling of their motion for a new trial. So far as concerns the last assignment, it certainly should be now unnecessary to repeat that in the federal courts the action of the trial judge in denying a motion for a new trial is not subject to review on error, except under peculiar circumstances which it is not suggested exist here.

Certain state and government officers in September, 1922, while going through a wooded portion of Mercer county, W. Va., found a still of from 150 to 200 gallons capacity and some 1,100 or 1,200 gallons of mash. From the condition of the latter, they concluded that it would not be ready to run off until the succeeding Monday morning. Before daylight on that day, six of them went to the vicinity and hid in the woods not far from the still until at some time after 8 o'clock three men had come to the still and had begun work at it. The officers then divided themselves, so as partially to surround the still. A member of the raiding party, while lying in the bushes, was discovered by one of the workers, who at once opened fire with a shotgun upon him and badly wounded him. The fire was returned, and many more shots were exchanged between the officials and the distilling party. As a result one of the latter received a mortal wound and fell unconscious, while the other two got away. The state grand jury made an inquiry into the affair, but, so far as the record discloses, did not return any indictment against any one for participation in it. The defendants were subsequently arrested by the federal authorities, indicted, and put upon their trial. Their defense was mistaken identity, in support of which each of them offered evidence to sustain an alibi. They swore that neither of them was at the still, and a number of persons testified that, at the time the shooting occurred, the defendants were elsewhere. Testimony positively identifying them as the men who fled from the still was given by several members of the raiding party.

[2] The learned counsel for the defendants in cross-examining some of the identifying witnesses, sought to show that, although they appeared before the state grand jury, they had not in their testimony before it identified either of the defendants as be-

ing present at the still. One of the government witnesses, having explained that, when he was before the grand jury, he did not know the name of the defendant Claut Neely, and therefore did not make any charge against him, was asked whether he mentioned to the state grand jury that he saw Claut Neely at the still. The government's objection to this question was sustained by the court, and the defendant excepted. As the witness had already said that he had not, when before the grand jury, charged the defendant Claut Neely, and had explained why he had not done so, it is obvious that no harm could have been done by the refusal to permit the witness to be again asked to repeat what he had already said.

[3] Another of the raiding party had been rather fully cross-examined as to what occurred when he was before the state grand jury, and he was then asked, "And no indictment was found at that time?" To this question an objection taken by the government was sustained, and error is assigned. The ruling was clearly right. What action the state grand jury took or did not take was not material to the issues on trial before the petit jury in the federal court.

In properly sustaining the objection of the government, the learned judge severely censured the attorneys for the defendants for seeking to introduce testimony which he said they knew was not admissible. To these remarks of the court exception was taken at the time, and they are here assigned as ground for reversal. It would have been better, from every standpoint, had the language used been more restrained; but we cannot see that what was said could have prejudiced either of the defendants.

[4] The attorney for the defendants, in cross-examining one of the officers who testified in the case, sought to show that no assistance was given by the officers to that member of the distilling party who had been mortally wounded during the shooting. The District Court stated that the evidence sought to be elicited would not be of any value, but permitted the question to be asked, and the officer testified that no assistance was given, because they were not in a position to give any, explaining that, from the nature of the wound, it was obvious that anything which could be done would not help the injured man. Later the witness said that his party was in momentary expectation of being fired upon. The attorney for the defendants asked the witness whether they did not have a sufficient force to remove the party who had been fatally

wounded to some other house, to which the government's counsel objected, and this objection was sustained, and the defendants excepted.

It is difficult to see how the evidence sought to be elicited was in any way pertinent to the issue of guilt or innocence of the defendants. However, this witness and others testified fully before the jury as to the number in the party of the officers and all of the facts and circumstances in the case, and, if the question had any pertinency at all, the jury were in possession of all of them, and were fully able to draw their own conclusion. In any view of the case, we cannot see that the defendants suffered any prejudice by the exclusion of the answer to this question.

[5] One of the witnesses for the prosecution had testified that he had shot the defendant Grat Neely in the arm during the firing which took place at the still. Later Grat Neely took the stand as a witness on his own behalf, and on cross-examination, having testified that he had never been shot, was asked whether he would show the jury his right arm. He said, "Yes, sir; I will." The attorney for the government then said, "Well, take your coat off, and show your elbow and right arm." The bill of exceptions then goes on to say that "the defendants by counsel objected to the foregoing question and the request of counsel for the government, which objection the court overruled, and the defendants excepted." There reference to the incident ceases. It does not appear that the exhibition was ever made, or even that the objection was taken until after the witness had expressed his willingness to bare his arm.

Assuming, however, that the point was made in due season, and that the defendant Grat Neely, in obedience to the ruling of the court, unwillingly rolled up his sleeve, we cannot see that any error was committed. The defendant, when he voluntarily went on the stand, subjected himself to cross-examination. Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448. We have no occasion here to consider what limitations there may well be upon the right of the court to require a witness to permit the inspection of some part of his body for we think it obvious that, whatever they are, they have no application, when, as here, all that was asked was that the witness should roll up his sleeve above the elbow.

[6] We might well bring our consideration of the case to an end here, having passed upon all the errors which have been

assigned. Certainly, since the decision of the Supreme Court in United States v. Staff-off, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358, it is unnecessary to say that there is nothing in the contention of defendants' counsel that the internal revenue statutes under which the indictment was found are no longer in force. It is equally impossible to hold that the defendants could not lawfully be punished upon each of the counts upon which they are convicted. It is true that one who runs a moonshine distillery generally commits all the crimes charged by them, but those offenses are nevertheless distinct. Operating a distillery without registering it is a different thing from operating it without giving a bond. A distillery may be both registered and bonded, and yet be operated with intent to defraud the United States out of its taxes, or it may be carried on without any such intent, and yet the required sign may not be displayed, and one who knowingly works in it may therefore violate section 3279 of the Revised Statutes.

[7] Under the circumstances of this case, it is immaterial whether a separate punishment could fairly be imposed upon the defendants for the remaining offense of unlawfully and knowingly carrying and delivering mash to a distillery which did not exhibit the required sign. The only evidence that they did bring the mash to the distillery was that they were found operating it. Doubtless that was sufficient to justify the jury in finding that they were so far concerned in the raw material being brought to the still as to be principals in that offense. Whether under such conditions they could be punished, both for working at such a still and for carrying the raw material to it, we need not inquire (Morgan v. United States [C. C. A.] 294 F. 82), because the sentence imposed by the court is less in the aggregate than could be given on the other counts.

[8] We have not failed to notice that the sentence was a general one, and that, while it did not exceed the aggregate of the punishments which could have been imposed on the counts upon which the defendants were convicted, it did exceed that which could have been validly given upon any one count. At common law, there would have been at least serious question as to whether such a sentence could be upheld. 2 Bishop's New Criminal Procedure, § 1327. The Circuit Court of Appeals for the Third Circuit, in United States v. Peeke, 153 F. 166, 82 C. C. A. 340, 12 L. R. A. (N. S.) 314, held that it could not be. This case was decided in 1907, but, although the court in its opin-

ion cited a number of cases and discussed them, no reference was made to what had been said by the Supreme Court some seven years before in Ex parte De Bara, 179 U. S. 316, 21 S. Ct. 110, 45 L. Ed. 207, to the effect that the court may "in a single sentence of one day, or of eighteen months, or three times eighteen months, * * * express its views of the criminality of a defendant, and, to use the language of the statute, 'proportion the punishment especially to the degree in which the abuse of the post office establishment' enters as an instrument 'in the defendant's fraudulent scheme and device.'"

Very possibly that statement had not escaped the attention of the Circuit Court of Appeals for the Third Circuit. It may not have been referred to, because it was thought that the Supreme Court had under consideration at the time the quite peculiar provision of section 5480 of the Revised Statutes, then in force, and under which De Bara had been convicted and sentenced. Nevertheless, in the still earlier case of In re Henry, 123 U. S. 372, 8 S. Ct. 142, 31 L. Ed. 174, the court said that the provision in question was not materially different from that of section 1024 of the Revised Statutes (Comp. St. § 1690), which allows the joinder in one indictment of charges against a person for two or more acts or transactions of the same class of crimes or offenses and the consolidation of two or more indictments found in such cases.

The language used in the De Bara Case has since been accepted by a number of the federal courts as expressing the general rule upon the subject. The question has been fully considered by the Circuit Court of Appeals for the Eighth Circuit in at least three cases. Hyde v. United States, 198 F. 613, 119 C. C. A. 493; Myers v. Morgan, 224 F. 413, 139 C. C. A. 641; Brinkman v. Morgan, 253 F. 558, 165 C. C. A. 223. In Myers v. Morgan the court expressly declined to follow United States v. Peeke, supra. Myers had been convicted on two counts. The maximum sentence which could have been imposed on either was five years. He received a single sentence of ten years. After having served the maximum time to which he could have been sentenced on one count, he sued out a writ of habeas corpus. The writ was dismissed.

It is true that in that case the question was not raised by writ of error, but by petition for habeas corpus; but the learned court did not base its holding on that distinction, as Judge Newman had done in the

earlier case of Howard v. Moyer (D. C.) 206 F. 555. Moreover, the case of Hyde v. United States, supra, came before the Circuit Court of Appeals for the Eighth Circuit on writ of error. In Ex parte Poole (D. C.) 273 F. 623, Judge Bourquin in a habeas corpus case held that the modern doctrine sanctioned the imposition of a single general sentence which, while exceeding the maximum which could be lawfully imposed upon a single count, was not greater than the aggregate sentence permitted upon the several counts under which the defendant had been convicted. We are of the same mind.

Admittedly, in the instant case, the judge might properly have said: "I sentence you to serve two years in the penitentiary on the first count and two years on the second, the sentence on the second to begin on the expiration of the service of the sentence under the first; and I further sentence you to serve two years on the third count, the serving of the sentence on the third count to begin at the expiration of the service of the sentence on the second count." The practical consequences to the defendants of the sentence actually imposed are precisely the same, and they therefore have no occasion to complain.

Nevertheless, all things that are lawful are not expedient. We are persuaded that by far the better practice is for the trial court in its sentence expressly to apply the punishment it awards to the separate counts upon which the prisoners have been convicted, and to direct whether their punishment shall be served consecutively or concurrently. If this be done, a much simpler problem will be presented to the appellate court, in the event that in the trial below error has been committed as to the issue raised by some, but not by all, of the counts.

Affirmed.