**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 11-5048

DANIEL J. BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, Senior District Judge.
(3:10-cr-00016-NKM-1)

Argued: October 26, 2012

Decided: December 6, 2012

Before WILKINSON, KING, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

**COUNSEL**

**ARGUED:** Frederick Theodore Heblich, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Nancy Spodick Healey, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Christine Madeleine Lee, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, Lauren Smith, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Daniel J. Brown appeals from his conviction and sentence in the Western District of Virginia for a child pornography offense. The grand jury returned a two-count indictment against Brown, charging him with receiving visual depictions involving the use of minors engaging in sexually explicit conduct ("child pornography"), in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count One), and with possessing child pornography, in contravention of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count Two). Brown sought to suppress evidence that had been recovered from his personal laptop computer (the "laptop"). The district court rejected his suppression motion, however, and Brown was found guilty by a jury on both charges. After vacating Brown's conviction on Count Two, the court sentenced him on Count One to 144 months in prison and ten years of supervised release. Brown maintains that the court's denial of his motion to suppress was erroneous, and he also contends that the court erred in vacating and dismissing Count Two (the lesser-included offense) rather than Count One. As explained below, we reject each of Brown's contentions and affirm.

I.

In May 2009, Detective Nicholas Rudman of the Charlottesville (Virginia) Police Department, who was assigned to investigate internet crimes against children, began an investigation of an internet protocol ("IP") address associated with a computer that had downloaded files containing child pornography.[1] Those files were identified to Rudman by what is known as "hash value," rather than by a proper name.[2] Rudman recognized the hash values of the files as corresponding to those which, he knew from prior experience, contained child pornography. The pornographic files had been transmitted over the internet through peer-to-peer (file sharing) networks, where users are able to download each others' digital files.

Detective Rudman's investigation revealed that the subscriber of the IP address was Medical Transport, LLC, a private ambulance business located in Charlottesville. Based on information obtained from the company's manager, Rudman and Detective Todd Lucas were able to narrow the focus of their investigation to defendant Brown and Justin Yarboro, who worked together and were always on duty at Medical Transport when the files were downloaded. Using the information they had discovered, the detectives secured a search warrant on June 17, 2009, for Medical Transport's headquarters. Rudman and Lucas, joined by Detectives Lisa Reeves and Michael Flaherty, executed the search warrant that day while Brown and Yarboro were on duty. Their search of Medical Transport's building did not, however, reveal any computers or electronic equipment relevant to their investigation.

---

[1] Our recitation is drawn from the facts adduced at trial, as well as those set forth in Brown's motion to suppress, which the district court accepted as true.

[2] A "hash value" is a code that identifies an individual digital file as a kind of "digital fingerprint." *See United States v. Wellman*, 663 F.3d 224, 226 n.2 (4th Cir. 2011).

When the police officers arrived at Medical Transport, and while they were executing the search warrant, Brown and Yarboro were out on a call in an ambulance. Upon the duo's return to Medical Transport, they pulled the ambulance to the front of the building and exited the vehicle. The detectives promptly approached the ambulance, introducing themselves as officers of the Charlottesville Police Department investigating internet crimes against children. Detective Rudman then inquired of Brown and Yarboro, "Do you guys have any laptops in your vehicle?" J.A. 825.[3] When Brown responded in the affirmative, Rudman asked, "Can you get those for us?" *Id.* Brown complied, retrieving his laptop, which Rudman took out of Brown's hands and handed to Detective Flaherty for inspection. Brown and Yarboro were then brought into the Medical Transport building and interviewed separately. Rudman conducted the interview of Yarboro, who was the initial focus of the investigation because he was younger than Brown and was presumably more computer savvy. Detective Lucas simultaneously interviewed Brown, and quickly realized that Brown was the more likely suspect of the two.

Detective Reeves, who was present at the outset of Brown's interview, also deduced that Brown was more likely to have downloaded the files. She promptly left the interview room to interrupt Detective Rudman's interview of Yarboro and lead Rudman to where Lucas was interviewing Brown. Detective Rudman explained that he was present to ask about child pornography. During the interview, Rudman showed Brown documents from the investigation indicating that files containing child pornography had been downloaded at Medical Transport's IP address. Brown soon admitted that his laptop was the computer that had been involved, and he acknowledged searching for child pornography by computer on and off for a couple of years, using search terms like "daughter," "incest," and "PTHC" (pre-teen hard core). The detectives thereafter

---

[3]Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

concluded the interview. Having seized Brown's laptop, the detectives procured a second search warrant, authorizing them to search the laptop itself. The laptop was found to contain videos and images of child pornography.

Brown was indicted by the grand jury in June 2010. A superseding indictment, returned on February 9, 2011, contains the two charges underlying this appeal.[4] After preliminary proceedings in the case, Brown's jury trial was scheduled for Monday, February 28, 2011. Brown did not file his motion to suppress, however, until late on Saturday, February 26, 2011.

By his suppression motion, Brown suggested that the search warrant for Medical Transport did not authorize a seizure of Brown's laptop because the laptop was not found in the Medical Transport building. The motion contended that the warrant only authorized the search of "the business of Medical Transport," and specifically identified and described the building, which was located on Harris Street in Charlottesville. The motion maintained that the warrant allowed the detectives to search for computers, electronic storage devices, and employee records relating to scheduling, but did not authorize a search of either Brown or the ambulance outside the building. More specifically, the motion asserted that

> [n]either Brown nor the computer was at the location

---

[4]In Count One, Brown is charged with having "*knowingly received . . .* one or more visual depictions . . . , and the production of such visual depiction(s) involved the use of a minor engaging in sexually explicit conduct and such visual depiction(s) were of such conduct . . . in violation of Title 18 United States Code, Sections 2252(a)(2) and 2252(b)(1)." J.A. 15 (emphasis added). Count Two alleges that Brown "*knowingly possessed* . . . at least one matter which contained a visual depiction . . . , and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct . . . in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2)." *Id.* (emphasis added).

> the warrant authorized for search. Officer Rudman's statements reveal that the CPD officers' zeal to obtain the subject of the warrant led them to disregard their authority to search for it. . . . Here, the warrant clearly allows for search inside a specific building but officers chose to search a person and vehicle outside of the building. Thus, the officers found what they were looking for but they did not find it in an area where they were constitutionally permitted to look.

J.A. 22.[5]

When the parties convened on the Monday morning of trial, the district court advised Brown's lawyer that "I'm not going to listen to a lot of argument on motions that are filed late, but you can tell me what it is you want to argue and I'll consider it as quickly as I can." J.A. 25. Brown's lawyer briefly explained his position that the police officers had exceeded the scope of the search warrant in their seizure of Brown's laptop, to which the court responded, "*I'm going to deny your motion based on what you filed.* I'm not sure there was such a search." J.A. 26 (emphasis added). The court continued, "Disregarding whether [the motion is] late or not, I think it is late, but on the merits, I don't think there's substance to the motion and I'm going to deny the motion to suppress." J.A. 29.

---

[5]The suppression motion also portrayed Brown's initial encounter with the detectives as a coercive scenario. According to the motion, after Detective Rudman asked Brown to retrieve his laptop, "Brown turned around and walked back to the passenger door of the ambulance. Rudman followed inches behind Brown. Following the directives of the officers, Brown stepped into the vehicle and retrieved a laptop computer. As Brown disembarked from the ambulance, Detective Rudman pulled the laptop out of Brown's hands." J.A. 20. For purposes of this appeal, we accept the factual allegations of the motion to suppress as true, as did the district court when it advised Brown's lawyer just before trial that it would deny suppression "based on what you filed." *Id.* at 26.

Brown's jury trial lasted for three days and involved the testimony of several witnesses, including Brown himself. When Brown renewed his motion to suppress at the conclusion of the prosecution's evidence, the district court again rejected it, explaining:

> As far as the original motion to suppress, I think you've heard all the evidence. You've questioned the witnesses. The Court knows all of the evidence you would put on regarding that. On the merits of it, I think — I don't think it's a meritorious argument. . . . I also think no justification for not filing it timely has been shown.

J.A. 532.

On March 2, 2011, after being instructed by the district court, the jury returned a guilty verdict on both counts. In a post-trial motion filed on September 21, 2011, Brown argued that the possession offense of Count Two is a lesser-included offense of the receiving offense in Count One, and that his convictions on both offenses therefore violated the Double Jeopardy Clause of the Fifth Amendment. Brown moved to dismiss Count One, which charged him with knowingly *receiving* child pornography, as opposed to Count Two, which charged him with knowingly *possessing* such files. *See supra* note 4. The United States Attorney did not dispute that possession is a lesser-included offense of receipt, but moved to dismiss Count Two, asserting that Brown should be sentenced on Count One only.[6]

Prior to imposing sentence on Brown, the district court granted the government's dismissal motion as to Count Two,

---

[6]Though we have not confronted the question, our sister circuits are in agreement that the knowing possession of child pornography is generally a lesser-included offense of the knowing receipt thereof. *See United States v. Dudeck*, 657 F.3d 424 (6th Cir. 2011) (collecting cases).

the lesser offense. Consequently, Brown was sentenced solely on Count One to 144 months in prison and ten years of supervised release. Brown has timely noticed this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## A.

Brown's initial contention is that the district court improperly rejected his motion to suppress as untimely. Because the court ruled on the substance of the motion notwithstanding its purported tardiness, we shall confine our review to the merits and bypass the timeliness issue. In that vein, Brown asserts that the court erred when it failed to conduct an evidentiary hearing prior to denying the motion. Rather than arguing for outright reversal, Brown seeks remand for the desired hearing, asserting that the court acted prematurely. More specifically, Brown contends that the court should have assessed whether the seizure of his laptop by the officers was reasonable, and he opposes our consideration of any alternative bases for denial of his suppression motion. In its response brief, the government asserts that exigent circumstances existed to justify the officers' seizure of the laptop.

On a motion to suppress, we assess the district court's legal determinations de novo. *See United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012). We are not obliged to remand for an evidentiary hearing if "any reasonable view of the evidence, looked at in the light most favorable to the government, will sustain the denial." *United States v. Bethea*, 598 F.2d 331, 333-34 (4th Cir. 1979). Nevertheless, our inquiry is not limited to the district court's reasoning, and we are entitled to reject a remand request and affirm on "any ground supported by the record." *United States v. Patterson*, 278 F.3d 315, 317 (4th Cir. 2002). In this case, the government does not contest Brown's assertion that the search warrant for the Medical Transport building failed to authorize a search or sei-

zure of Brown's person or the ambulance. Thus, rather than engaging in an analysis of the scope of the warrant (which is not in the record), we will proceed on the proposition that the seizure of Brown's laptop was warrantless.[7]

The Fourth Amendment protects citizens against unreasonable searches and seizures. Although warrantless searches and seizures are considered to be "per se unreasonable," there are "a few specifically established and well-delineated exceptions" to the search warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). The underlying command of each such exception is reasonableness — "the ultimate touchstone of the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (internal quotation marks and alteration omitted). In this case, as the government suggests, the applicable exception to the warrant requirement is "exigent circumstances."[8]

When "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search [or seizure] is objectively reasonable under the Fourth Amendment," police officers are entitled to bypass the warrant requirement. *King*, 131 S. Ct. at 1856 (internal quotation marks omitted). The types of exigent circumstances that may justify a warrantless seizure include, inter alia, the imminent destruction of evidence. *See United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) (recognizing that "[e]xigent circumstances can arise when the evidence might be destroyed before a search warrant could be obtained"). Even if exigent circumstances have been created by actions of the police —

---

[7]"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). It is clear that a seizure of Brown's laptop occurred here.

[8]Although Brown contends that the government waived its exigent circumstances theory, we are, as explained above, entitled to affirm on any grounds supported by the record in our de novo review.

e.g., when the announced presence of officers creates an immediate fear of detection — the authorities are entitled to act reasonably and seize evidence in order to prevent its destruction. *See King* at 1857 (explaining that "in the vast majority of cases in which evidence is destroyed by persons who are engaged in illegal conduct, the reason for the destruction is fear that the evidence will fall into the hands of law enforcement").

The Supreme Court recognized that, with respect to warrantless seizures, "the Fourth Amendment requires only that the steps preceding the seizure be lawful." *King*, 131 S. Ct. at 1858. In other words, "the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 1862. Here, the Charlottesville detectives had probable cause to believe that child pornography was being downloaded at the Medical Transport building, and they could reasonably believe that it was being downloaded at that location by either Brown or Yarboro. The detectives' showing of probable cause — accepted and endorsed by the magistrate judge in issuing the search warrant for the building — came from tracing the illegal files to the Medical Transport IP address and learning from Medical Transport's manager that Brown and Yarboro were the only employees working at the time that the files were downloaded. The detectives' entry onto the company's property was authorized by the search warrant, and their subsequent inquiries regarding laptop computers possessed by Brown and Yarboro, were therefore lawful and proper.

Based on their investigation, the detectives had probable cause to believe that *any* computer used by either Brown or Yarboro during their work shifts at Medical Transport harbored evidence of child pornography. Accordingly, when the Charlottesville detectives informed Brown that they were investigating internet crimes against children, they had probable cause to believe that Brown's laptop, which he possessed

during his work shift, contained evidence of child pornography. *See United States v. Place*, 462 U.S. 696, 701 (1983) (recognizing that the Fourth Amendment permits a warrantless seizure of property "[w]here law enforcement authorities have probable cause to believe that [the property] holds contraband or evidence of a crime . . . , if the exigencies of the circumstances demand it."). Following up on Brown's response, it was entirely reasonable for the officers to seize Brown's laptop — as they did — to prevent either it or its contents from being damaged or destroyed. *See King* at 1862.

The Eleventh Circuit recently addressed a similar issue in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009). Mitchell was convicted of receiving images of child pornography, after an investigation into a known trafficking website led police officers to several of the website's subscribers. One of the subscribers was Mitchell, whom two agents visited in his home. Mitchell admitted to the agents that there was "probably" illegal contraband on his home computers, and he authorized them to search one of his computers and seize its hard drive. The court concluded that, while the agents' conduct constituted a warrantless seizure — in that it interfered with Mitchell's possessory interests — the seizure of the computer "to ensure that the hard drive was not tampered with before a warrant was obtained," did not contravene the Fourth Amendment's warrant requirement. *Id.* at 1350.

Another decision arising from a similar factual setting supports our ruling. In *United States v. Respress*, where officers had conducted a warrantless seizure of the suitcase of an airline passenger who was a drug courier suspect, the court of appeals explained that "[t]his was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted." 9 F.3d 483, 486 (6th Cir. 1993). The actions of the Charlottesville detectives in seizing Brown's laptop were likewise reasonable, in order to prevent the destruction of relevant evidence. Those actions

thus fall well within the exigent circumstances exception to the Fourth Amendment's warrant requirement. *See United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (upholding warrantless seizure of computer where officers had probable cause to believe it contained evidence of child pornography because, in part, such seizure "prevent[ed] the disappearance of evidence" (internal quotation marks omitted)). In these circumstances, we must reject Brown's contention of a Fourth Amendment violation.

## B.

Finally, Brown suggests that the district court erred when it denied his motion to dismiss and sentenced him solely on the basis of his Count One receipt offense, rather than on the lesser-included Count Two possession offense. We review for abuse of discretion the district court's denial of Brown's motion to dismiss. *See United States v. Smith*, 55 F.3d 157, 158 (4th Cir. 1995). "Of course, a district court by definition abuses its discretion when it makes an error of law." *Rice v. Rivera*, 617 F.3d 802, 811 (4th Cir. 2010) (internal quotation marks omitted). When a defendant has been convicted of multiplicitous offenses — in this case, a greater and a lesser-included offense — the trial court shall "enter judgment on only one of the statutory offenses." *See Ball v. United States*, 470 U.S. 856, 865 (1985).

Put simply, the court did not abuse its discretion by denying Brown's motion and striking the lesser-included offense of possession of child pornography; on the contrary, the court properly adhered to a long line of authorities directing vacation of the conviction that carries the more lenient penalty when a defendant is convicted of both a greater and a lesser-included offense. *See United States v. Luskin*, 926 F.3d 372, 378 (4th Cir. 1991) ("The better practice [when a defendant is convicted of a greater and a lesser-included offense] would be for the trial judge to strike the conviction on the lesser included offense[.]"); *United States v. Snyder*, 766 F.2d 167,

171 (4th Cir. 1985) (recognizing that, where a defendant is convicted of both a greater and a lesser-included offense, "the proper remedy is to vacate both the conviction and the sentence on the included offense, leaving the conviction and the sentence on the greater offense intact" (internal quotation marks omitted)); *see also United States v. Martorano*, 697 F.3d 216, 220 (3d Cir. 2012) (explaining that, when faced with convictions on both greater and lesser-included offenses, to vacate the greater offense "would be inconsistent with the very concept of a lesser included offense" (internal quotation marks omitted)); *United States v. Dudeck*, 657 F.3d 424, 431 (6th Cir. 2011) ("If it cannot be determined that separate and distinct conduct occurred for each offense . . . the district court shall vacate [the lesser offense]"). We therefore reject Brown's contention that the court erred in vacating his conviction and dismissing Count Two rather than Count One.[9]

## III.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

---

[9]In his challenge to the dismissal of Count Two, Brown also maintains that the jury was not properly instructed on the distinction between knowing possession and knowing receipt of child pornography. Although he interposed no objections at trial, he argues that, as a result of the faulty instructions, "there is serious reason to doubt that the jury concluded Mr. Brown actually 'knowingly received' the images found on his computer equipment." Br. of Appellant 23. Inasmuch as the instructions did not permit the jury to convict Brown without concluding that he knew the content of the pornography depictions at the time he received them, the court did not plainly err in its instructions. *See United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996) (requiring that instructions be reviewed as whole); *United States v. Wilson*, 484 F.3d 267, 279 (4th Cir. 2007) (applying plain error review to instructions if no objection made at trial).